**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ALELIE SERRANO,**

                                            **Plaintiff,**

          **vs.**                                         **12-CV-1592**
                                                          **(MAD/CFH)**

**NEW YORK STATE DEPARTMENT**
**OF ENVIRONMENTAL CONSERVATION;**
**COMMISSIONER JOE MARTENS; MAJOR STEVEN**
**GEROULD; PETER FANELLI, DIRECTOR, DIVISION**
**OF LAW ENFORCEMENT; ERIC TUPAJ, LIEUTENANT,**
**DIVISION OF LAW ENFORCEMENT,**

                                            **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**OFFICE OF LOWELL R. SIEGEL**            **LOWELL R. SIEGEL, ESQ.**
23 Indian Ladder Drive
Altamont, New York 12009
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**                **JAMES SEAMAN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff, Alelie Serano, commenced this suit against her employer, New York State

Department Environmental Conservation ("DEC"), and various DEC employees on October 24,

2012.  Plaintiff was terminated from her position on January 25, 2013 and she filed an amended

complaint on February 13, 2013.  Pending before this Court is Defendants' motion to dismiss

Plaintiff's amended complaint.

## II. BACKGROUND

Plaintiff was employed at the DEC as a dispatcher from October 2006 until January 2013. *See* Dkt. No. 9 at 4. During this time, Plaintiff was the only dispatcher at the DEC of Puerto Rican/Hispanic descent. *See id.* at 5. One of the main reasons Plaintiff was hired was because of her fluency in Spanish. *See id.* Plaintiff worked in the Ray Brook office from October 2006 until February 2010, when she was transferred to Albany. *See id.* at 4. In 2007, Defendant Tupaj replaced Lieutenant Stabak as Plaintiff's main supervisor. *See id.* at 5. Defendant Gerould supervised the Central Dispatch Unit in the Central Office in Albany from May 2007 to April 2011. *See* Dkt. No. 11-12 at 1. He has had no supervisory control over the Central Dispatch Unit since his relocation in April 2011. *See id.*

On March 4, 2008, Plaintiff filed a charge of discrimination with the Affirmative Action Office of the DEC. *See* Dkt. No. 11-5 at 7. The Affirmative Action Office issued a finding of discriminatory behavior and recommended remedial action to ensure an end of such behavior. *See id.* at 9. On August 26, 2008, Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR") alleging retaliation for filing her previous Affirmative Action complaint. *See id.* at 1. On October 8, 2008, Plaintiff filed another charge with the DHR alleging discrimination and harassment. *See* Dkt. No. 11-6 at 1. On March 23, 2009, the DHR issued a statement that "there is probable cause that Complainant may have been subjected to discriminatory treatment, including retaliation, and said treatment may be ongoing." *See* Dkt. No. 11-7 at 6. On March 30, 2010, Plaintiff filed another charge of discrimination with the DHR. *See* Dkt. No. 11-10 at 1. The DHR determined that this charge showed no probable cause of discrimination because, *inter alia*, the "allegations regarding ridiculing behavior from coworkers were already litigated during the December 2009 Division hearing." *See* Dkt. No. 11-11 at 2.

On or about May 18, 2012, Plaintiff filed a charge of discrimination and retaliation based on her race/national origin with the Equal Employment Opportunity Commission ("EEOC"). *See* Dkt. No. 11-3 at 2. The EEOC determined that it did "not seem that [they] would find a violation of the law" because "most of [Plaintiff's] allegations are untimely (beyond 300 days) or have already been investigated by the NYSDHR." *See* Dkt. No. 11-2 at 2. On July 26, 2012, the EEOC issued a right to sue letter, allowing Plaintiff ninety days to file a suit against the DEC. *See id.* at 3. Plaintiff commenced this action on the ninetieth day, October 24, 2012. *See* Dkt. No. 1.

On January 4, 2013, Plaintiff filed another hostile work environment and discrimination complaint with the Affirmative Action Bureau of the DEC. *See* Dkt. No. 11-13 at 6. Plaintiff was then terminated on January 25, 2013, by a letter stating in part, "[t]he reasons for this decision include your persistent and unfounded complaints that have disrupted the workplace, conduct that undermined the mission of the unit, insubordination, and time and attendance concerns." *See* Dkt. No. 15-3 at 2.

Several alleged instances of workplace conduct are relevant to this case. These instances include: (A) alleged conduct which has been previously adjudicated by the DHR, (B) undated allegations of conduct that have not been previously adjudicated, and (C) facts surrounding the service of Defendant Gerould.

## A.    Allegations of conduct adjudicated by the DHR

Plaintiff alleged that a co-worker, Angela Reynolds, complained about Plaintiff speaking Spanish in the workplace and Sergeant Cranker advised Plaintiff to consider relocating to Puerto Rico. *See* Dkt. No. 9 at 5–6. Plaintiff alleged several offensive items had been placed in her

vicinity after filing a discrimination complaint at Ray Brook including: a can with "bullshit" written on the label, a set of "eyeballs," a Mr. Bill doll, a bull's eye target, and a hangman's noose placed near Plaintiff's locker. *See id.* at 6. Defendant Gerould allegedly minimized the Affirmative Action Office's determination of a hostile work environment by calling the report "embellished." *See id.* Similarly, Defendant Tupaj allegedly minimized the counseling memoranda in relation to the Affirmative Action determination, calling them a "slap on the hand." *See id.* Plaintiff claims that Defendants were permitted access to her work e-mail so that her activities could be closely monitored and that Defendants engaged in "hyper-supervision" of Plaintiff. *See id.* at 6–7. Plaintiff was excluded from training given to other dispatchers at Ray Brook and Defendants allegedly failed to allow Plaintiff to engage in diversity training. *See id.* Plaintiff claims that she was required to provide a doctor's note when she missed work, and overtime was allegedly limited to her and given to others with less seniority. *See id.* at 7. Plaintiff alleges that she was struck in the head by Angela MacBride with a binder and that her car was vandalized by co-workers. *See id.* at 6–7.

**B.      Undated allegations of conduct that have not been previously adjudicated**

Plaintiff alleged that co-workers Laurenzo and Nightengale referred to Plaintiff as a "spic" in the presence of other employees and that she was also referred to as "wildlife." *See id.* at 5–6. Similar to the objects placed near Plaintiff at Ray Brook, a can with "bullshit" on the label, a Mr. Bill doll, and a pair of eye balls were placed near Plaintiff in Albany after she had made known that these items offended her at Ray Brook. *See id.* at 7. In the Albany office, Plaintiff's co-workers allegedly discarded her personal items and Christopher Laurenzo and Jennifer Quade barricaded Plaintiff in her workstation. *See id.* Defendants allegedly excluded Plaintiff from

4

training opportunities provided to others while she was in Albany. *See id.* at 7–8. Defendant Tupaj allegedly criticized Plaintiff for providing early sick leave notification and refused to address her seniority after her transfer to Albany. *See id.*

## C. Facts surrounding service of Defendant Gerould

Defendant Gerould's business address is at the Avon regional office and he does not regularly receive business correspondence from the Albany office. *See* Dkt. No. 11-12 at 1. In November 2012, Defendant Gerould was handed a summons with his name on it and a copy of the complaint filed in this case. *See id.* at 2. The envelope containing the summons was addressed to the Albany office, delivered to the Avon office through intra-agency mail, and handed to Defendant Gerould by a member of the Avon support staff. *See id.* A professional process server served a summons and amended complaint on Defendant Gerould at his home on May 28, 2013. *See* Dkt. No. 15-4 at 2.

## D. Pending before the Court

Plaintiff's amended complaint asserts (1) Title VII discrimination, retaliation, and hostile work environment claims on the basis of her race/color and ancestry/national origin, (2) New York Executive Law § 290 ("HRL") discrimination and retaliation claims, and (3) a 42 U.S.C. § 1983 equal protection violation. *See* Dkt. No. 9 at 12-15. Plaintiff has requested that, if any of her claims are ruled deficient, this Court grant leave to re-plead such claims. *See* Dkt. No. 15-5 at 30.

Defendants have filed a motion to dismiss Plaintiff's amended complaint arguing dismissal on seventeen different grounds. *See* Dkt. No. 11-13. Generally, Defendants contend as follows:

(1) individuals are not subject to Title VII liability; (2) Plaintiff has failed to exhaust her administrative remedies; (3) Plaintiff has failed to state a claim upon which relief may be granted; (4) the statute of limitations bars certain aspects Plaintiff's claims; (5) the Eleventh Amendment bars Plaintiff's claims against Defendants in their official capacities; (6) Plaintiff has failed to allege Defendants' personal involvement; (7) Plaintiff's equal protection claim is duplicative of her Title VII allegations; (8) Plaintiff's HRL claims are barred by the election of remedies doctrine; (9) personal jurisdiction over Defendant Gerould has not been obtained; and (10) the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims. *See id.*

### III. DISCUSSION

#### A.    Individual Liability under Title VII

"[I]ndividuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000). Plaintiff has conceded this and has withdrawn her Title VII claims against the individual Defendants. *See* Dkt. No. 15-5 at 25 n.5.

Based on the foregoing, the Court grants Defendants' motion to dismiss on this ground and the Title VII claims asserted against Defendants in their individual capacity are dismissed.

#### B.    Exhaustion

Filing a charge with the EEOC is "an essential element" of a Title VII claim and a prerequisite to bringing suit in federal court. *See Butts v. City of N.Y. Dep't of Hous.*, 990 F.2d 1397, 1402 (2d Cir. 1993), *abrogated by statute on other grounds as stated in Hawkins v. 1115 Legal Service Care*, 163 F.3d 684 (2d Cir. 1998); *see also Francis v. City of N.Y.*, 235 F3d 763, 767-68 (2d Cir. 2000); 42 U.S.C. § 2000e-5(e). Jurisdiction is conferred if a claim was

previously raised in an EEOC charge or if the federal claim is "reasonably related" to such a claim. *See Butts*, 990 F.2d at 1401–02. A claim is "reasonably related" to one raised in an EEOC charge (1) when it falls within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge;" (2) where the claim alleges retaliation for filing the EEOC charge, and it would likely be discovered during the EEOC investigation; and (3) "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* at 1402–03 (citations omitted).

"In determining whether a particular claim is reasonably related to the plaintiff's EEOC complaint, '[w]e look not merely to the four corners of the often inarticulately framed charge, but take into account the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Gomes v. Avco Corp.*, 964 F.2d 1330, 1334 (2d Cir. 1992) (quotation omitted). This loose pleading standard has subsequently been limited to instances where the facts stated in the EEOC claim could have reasonably been expected to alert the EEOC to an additional, unstated claim. *See McKinney v. Eastman Kodak Co.*, 975 F. Supp. 462, 467 (W.D.N.Y. 1997) (failing to find reasonable relatedness between disparate impact and retaliation claims when the employee claimed she was discharged in retaliation for previous complaints but did not allege any facts describing the process that employer implemented in deciding to terminate its employees). The focus is not necessarily on the specific claims charged with the EEOC, but rather "'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (quoting *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002)). While EEOC claims need not be artfully pleaded, they must state more than "vague, general allegations" to satisfy the EEOC exhaustion requirement. *Butts*, 990 F.2d at 1403.

In this case, Plaintiff filed an EEOC charge on March 16, 2012[1] alleging discrimination based on national origin and retaliation.  *See* Dkt. No. 11-3 at 2.  Plaintiff's EEOC charge states:

> I am a Hispanic female.  I have worked for Respondent since 2006.  I have filed multiple national origin discrimination charges with the New York State Division of Human Rights against Respondent.  In retaliation for having filed multiple discrimination charges against Respondent, I have been subjected to harassment and different terms and conditions of employment.  Some of the most recent incidents occurred since Autum[n] [sic] 2011.  My Supervisors continue to treat me unequally.  My coworkers, Angela Reynolds, Alicia Bormer and Ann Mcbride are always being granted all sorts of training outside the Region with lodgin[g] [sic], food and accommodations being paid for[], but I have not received the same training opportunity.

*See id.*

### 1. Race Discrimination

The Second Circuit has held that, because "'[a]n assertion of racial bias is conceptually distinct from a claim of discrimination on the basis of national origin,' raising a national origin claim before the EEOC does not automatically suffice to alert the agency to investigate incidences of racial discrimination."  *Deravin*, 335 F.3d at 201 (quoting *Sinai v. New England Tel. & Tel. Co.*, 3 F.3d 471, 475 (1st Cir. 1993)).  While national origin and race are often distinct elements, "the term 'Hispanic' may trigger the concept of race."  *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 459 (S.D.N.Y. 1998) (finding "reasonable relation" between race and national origin when an employee described as Hispanic only checked the "national origin" box, and not the "race" box, in an EEOC charge).

---

[1] Although the EEOC charge states that the discrimination took place on March 16, 2012, this is apparently an error and the parties have treated the EEOC charge as filed on or about this date since no other indication of a date is included on the charge.

In the present matter, the Court finds that, since Plaintiff asserted an EEOC national origin charge and described herself as Hispanic, the national origin charges are reasonably related to racial claims; and, therefore, Plaintiff has sufficiently exhausted her administrative remedies in regards to her claims of race discrimination. *See Alonzo*, 25 F. Supp. 2d at 459. Defendants' motion to dismiss Plaintiff's Title VII race discrimination claims for failure to exhaust administrative remedies is denied.

### 2. Retaliation

In her EEOC charge, Plaintiff asserted that she had been "subjected to harassment and different terms and conditions of employment" in retaliation for filing discrimination charges against Defendants. *See* Dkt. No. 11-3. Defendants admit that Plaintiff satisfactorily exhausted her retaliation claim, but contend that the Title VII claim should be limited to the specific instance of retaliation – lack of training opportunities – that Plaintiff stated in her EEOC charge. *See* Dkt. No. 16 at 5.

The exhaustion requirement does not require a recital of each factual instance relied upon in a Title VII claim; rather, "a district court may 'hear Title VII claims that either are included in an EEOC charge or are based on [reasonably related] *conduct subsequent to the EEOC charge . . . .*'" *Danials-Kirisits v. N.Y. State Office of Court Admin.*, No. 05-CV-800S, 2013 WL 1755663, *15 (W.D.N.Y. Apr. 24, 2013) (quoting *Butts v. City of N.Y. Dep't of Hous.*, 990 F.2d 1397, 1401 (2d Cir. 1993)) ("Thus, a reasonably related claim applies only to alleged discriminatory conduct that occurred after the EEOC charge is filed") (internal quotations omitted).

Plaintiff has fulfilled the exhaustion requirement for her retaliation claim due to her specific statement of being denied training opportunities. *See* Dkt. No. 11-3 at 2. Plaintiff's

allegation of "harassment and different terms and conditions of employment" in connection with her denial of training opportunities further supports her retaliation charge. *See id.* The Court finds these allegations sufficient to exhaust this claim; and, therefore, Defendants' motion to dismiss Plaintiff's Title VII retaliation claim for lack of exhaustion is denied.

### 3. Discrimination

Defendants contend that a plaintiff's reference in an EEOC charge alleging that she filed previous discrimination complaints as a reason for retaliation does not, without other mention of discrimination, sufficiently exhaust the discrimination claim. *See* Dkt. No. 16 at 5 (citing *Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir. 1996)). While Plaintiff's *pro se* EEOC charge may be inartfully pled, liberally construing Plaintiff's statements that coworkers received benefits not afforded to her, in connection with her reference to her multiple previous discrimination charges and her national origin, the Court finds that the allegations were sufficient to exhaust this claim. *See Deravin v. Kerik*, 335 F.3d 195, 201-02 (2d Cir. 2003). Specifically, Plaintiff mentioned that she has previously filed national origin discrimination charges against Defendants and that she was retaliated against for having filed those charges. *See* Dkt. No. 15-2. Thereafter, Plaintiff claims that she has been subjected to harassment and different conditions of employment, and that specifically identified coworkers have been granted training opportunities that she has not. *See id.* Liberally construed, these allegations are sufficient to withstand Defendants' motion to dismiss.

Based on the foregoing, Defendants' motion to dismiss Plaintiff's Title VII discrimination claim for lack of exhaustion is denied.

**C.  Failure to State a Claim**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading , the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955).

Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

### 1. Title VII Claims

#### a. Hostile Work Environment

"In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Co.*, 596 F.3d 93, 102 (2d Cir. 2010) (quotation omitted). "A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id.* (citation omitted). "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id.* (citation omitted). Moreover, the alleged hostile work environment must have been created by conduct relating to a characteristic protected by Title VII. *See Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir. 2001).

"Beyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer." *Gorzynski*, 596 F.3d at 103 (citation omitted). "When . . . the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer." *Id.* (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).

It has been repeatedly held that "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not objectively severe enough to establish a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). The test not only looks at isolated incidents, but requires consideration of all the circumstances present in the workplace contributing to its environment, such as the amount that the alleged conduct interferes with an employee's work performance, its frequency, severity, and threatening nature. *See Harris*, 510 U.S. at 23.

Plaintiff alleges that, starting in 2007, she had been the victim of several repeated instances of noteworthy conduct. Specifically, Plaintiff claims that hangman's nooses, cans with "bullshit" painted on them, pairs of eye balls and bull's-eye targets were placed near her workstation, after she made it known that this conduct offended her. *See* Dkt. No. 9 at 6–8. Plaintiff has been barricaded in her workplace, her personal items have been thrown away, and she has been hit in the head by co-workers. *See id.* Moreover, Plaintiff alleges that her car was vandalized and derogatory terms such as "spic" and "wildlife" were used towards her. *See id.*

These allegations rise above the ordinary tribulations of the workplace and are sufficient to satisfy the objective prong. *See id.* Moreover, Plaintiff's complaint sufficiently alleges that she had the subjective view that these instances were sufficiently abusive as evidenced by her multiple DHR complaints of a hostile work environment. Accordingly, the Court finds that Plaintiff has sufficiently pled a claim for hostile work environment; and, therefore, Defendants' motion to dismiss this claim is denied.

### b. Disparate Treatment

Title VII states that it is unlawful for an employer "to discharge any individual, or

otherwise to discriminate against any individual . . . because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1) (2013). To assert a prima facie Title VII disparate treatment claim, a plaintiff must establish that:

> (1) [s]he is a member of a protected class; (2) [s]he is competent to perform the job or is performing h[er] duties satisfactorily; (3) [s]he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on h[er] membership in the protected class.

*Dotson v. City of Syracuse*, No. 5:11-CV-620, 2013 WL 1293775, *10 (N.D.N.Y. Mar. 27, 2013) (citations omitted). At the pleading stage, however, a plaintiff need not establish a prima facie case, and can survive a motion to dismiss by asserting a plausible claim that "gives the defendant fair notice of the plaintiff's claim, the grounds upon which it rests and indicate[s] the possibility of discrimination." *Acosta v. City of N.Y.*, No. 11 Civ. 856, 2012 WL 1506954, *5 (S.D.N.Y. Apr. 26, 2012) (citation omitted).

To constitute a Title VII adverse employment action, there must be a "materially adverse" change in working conditions which "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, . . . or other indices . . . unique to a particular situation." *Giscombe v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 464, 2013 WL 829127, *5 (S.D.N.Y. Feb. 28, 2013) (citations omitted); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significant different responsibilities, or a decision causing a significant change in benefits"). Further, a "tangible employment action in most cases inflicts direct economic harm" and "requires an official act of the enterprise" which must be done with the "official power of the enterprise," not merely harm inflicted by a co-worker. *Burlington Indus.*, 524 U.S. at 762.

The plaintiff must "raise a plausible inference that the action was taken on account of [her] race or national origin." *Acosta*, 2012 WL 1506954, at *5; *see also Griffin v. Brighton Dental Group*, No. 09-CV-6611P, 2013 WL 1221915, *5 (W.D.N.Y. Mar. 5, 2013) ("Evidence that an individual was treated differently from other employees, standing alone, is insufficient to prove discrimination"). Evidence that the plaintiff was treated less favorably than other, similarly-situated employees who were not a member of the plaintiff's protected class supports an inference of discriminatory intent. *See Griffin*, 2013 WL 1221915, at *6. Also, evidence that the plaintiff was subjected to offensive treatment, "such as name-calling, slurs, or bad jokes," directed at the plaintiff's membership in a protected class indicates discrimination. *Id.* (internal quotations omitted).

In the present matter, Defendants concede the first two elements, *i.e.*, that Plaintiff is a member of a protected class and that she was qualified for her position. *See* Dkt. No. 15-5 at 21. Regarding the alleged adverse employment, Plaintiff alleges that she was denied training opportunities and overtime pay that other, non-Hispanic employees were not. *See* Dkt. No. 9 at 6–7. This allegation, in connection with discriminatory comments directed towards Plaintiff – such as being called a "spic" and "wildlife," and being told to consider moving to Puerto Rico – give rise to an inference that Plaintiff suffered an adverse employment action because of her race or national origin. *See id.* Therefore, the Court denies Defendants' motion to dismiss Plaintiff's Title VII disparate treatment claim**.**

### c. Retaliation

To avoid dismissal of a Title VII retaliation claim, a plaintiff must plausibly allege that: "'(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of

plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'" *Gordon v. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (quotation omitted). "Protected activity" includes any "action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). Proof of causation can be shown either indirectly through circumstantial evidence, or "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon*, 232 F.3d at 117. In order to show a retaliatory motive by means of circumstantial evidence, there must be temporal proximity between the adverse employment action and the protected activity. *See Muhammad v. Juicy Couture/Liz Clairborne, Inc.*, No. 09-Civ-8978, 2010 WL 4032735, *6 (S.D.N.Y. July 30, 2010). "At the pleading stage, Plaintiff 'need not establish [such] a prima facie case of discrimination, but must nonetheless allege evidence stating a plausible claim of retaliation.'" *Stewart v. City of New York*, No. 11 Civ. 6935, 2012 WL 2849779, *10 (S.D.N.Y. July 10, 2012) (quotation and other citation omitted).

When a plaintiff claims retaliation for filing previous complaints of discrimination, such complaints "are protected activity even when the underlying conduct complained of *was not in fact unlawful* so long as [the plaintiff] can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law." *Amin v. Akozo Nobel Chems., Inc.*, 282 Fed. Appx. 958, 961 (2d Cir. 2008) (internal quotations omitted).

In *Amin*, the Second Circuit found that the plaintiff met his burden of establishing retaliatory motive through evidence that he (1) repeatedly complained about discrimination and racism by employer, (2) was instructed to stop making such complaints, (3) persisted in making such complaints, and (4) was fired shortly after one such complaint. *See id.* at 962. Even though

the defendant claimed that the plaintiff was fired for "insubordinate behavior and difficulty in working effectively with others," the court held that the proffered reasons for the plaintiff's termination may have been pretextual, and the plaintiff fulfilled his burden of showing that "the employment decision of which he complains 'was more likely than not motivated, in whole or in part,' by unlawful reasons." *Id.* (quotation omitted).

In the present matter, Plaintiff filed several claims of discrimination or harassment with various regulatory agencies.[2] *See* Dkt. No. 11-13 at 5–6. The Affirmative Action Office of the DEC issued a determination that probable cause existed as to Plaintiff's complaint of discriminatory treatment. *See* Dkt. No. 11-7 at 8. Moreover, as to Plaintiff's second DHR claim of retaliation, the office found that there is sufficient evidence to indicate that there is probable cause to believe that Plaintiff may have been subject to discriminatory treatment, including retaliation. *See* Dkt. No. 11-7 at 6. Plaintiff's other DHR claim was determined to not give rise to probable cause of discrimination. *See* Dkt. No. 11-11 at 2. The EEOC charge was dismissed because "most of [Plaintiff's] allegations [were] untimely (beyond 300 days) or [had] already been investigated by the NYSDHR." *See* Dkt. No. 11-2 at 2.

While Plaintiff's alleged discrimination in these administrative complaints may not have been an actual violation of Title VII, her factual assertions, coupled with the findings of probable cause from the DHR, establish that Plaintiff acted with good faith and a reasonable belief that such violations existed. Moreover, the investigations clearly demonstrate that Defendants were

---

[2] In March 2008, Plaintiff filed a discrimination charge with the DEC's Affirmative Action Office. In October 2008, Plaintiff filed hostile work environment and retaliation claims with DHR. On March 30, 2010, Plaintiff filed discrimination and retaliation charges with DHR. On May 18, 2012, Plaintiff filed a discrimination charge with the EEOC. On January 4, 2013, Plaintiff filed a hostile work environment and discrimination complaint with DEC's Affirmative Action Office.

aware of Plaintiff's protected activity. *See* Dkt. No. 11-8 at 8. The final two elements are satisfied by Plaintiff's termination letter. Defendants took adverse action against Plaintiff and a causal connection to the protected activity is demonstrated by the fact that she was terminated based upon "persistent and unfounded complaints that have disrupted the workplace, conduct that undermined the mission of the unit, insubordination, and time and attendance concerns." *See* Dkt. No. 15-3 at 2. Moreover, Plaintiff was terminated twenty-one days after filing her last complaint with DEC's Affirmative Action Office, and while this civil action was ongoing. *See* Dkt. No. 11-13 at 6.

Based on the foregoing, the Court finds that Plaintiff has plausibly alleged that her termination was, at least in part, due to her filing of previous discrimination complaints; and, therefore, denies Defendants' motion to dismiss the Title VII retaliation claim for failure to state a claim.

### 4. HRL Claims

#### a. Discrimination and Retaliation

Discrimination and retaliation "claims under the HRL are evaluated using the same analytical framework used in Title VII actions." *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012). Accordingly, Defendants' motion to dismiss Plaintiff's HRL discrimination and retaliation claims for failure to state a cause of action is denied.

#### b. Aid and Abet

As explained below, Plaintiff has sufficiently pled that Defendants Tupaj and Garneau aided and abetted prohibited conduct in violation of HRL § 296(6). *See infra* Part (F)(2).

Therefore, Defendants' motion to dismiss Plaintiff's HRL aid and abet claim for failure to state a cause of action is denied.

### 5. Equal Protection

An equal protection violation requires a plaintiff to allege that "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations . . . ." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citations omitted). To establish an inference of discriminatory motive, the plaintiff must sufficiently plead "that other similarly situated individuals – who are outside of the protected class to which the plaintiff belongs – have been treated differently." *Faccio v. Landry*, No. 1:10–CV–785, 2012 WL 3637412, *3 (N.D.N.Y. Aug. 22, 2012); *see also Village of Willobrook v. Olech*, 528 U.S. 562, 563 (2000) (recognizing equal protection claims where there is no rational basis for the difference in treatment between similarly situated individuals).

Plaintiff indicates several incidents where she was allegedly treated differently from similarly situated individuals. First, Plaintiff was put on sick leave notification while other, non-Hispanic employees were not. *See* Dkt. No. 9 at 9. Second, Plaintiff alleges that other, non-Hispanic coworkers were afforded training opportunities that she was not. *See id.* at 7. Third, Plaintiff alleges that Defendants limited her overtime in spite of her seniority, while other non-Hispanic employees with less seniority were afforded overtime. *See id.* at 10.

Defendants failed to provide any explanation for the instances Plaintiff has alleged she was treated differently from similarly situated coworkers. *See* Dkt. No. 11-13 at 21–22. At this stage in the litigation, Plaintiff's allegations are sufficient to state a plausible equal protection

claim.  Accordingly, Defendants' motion to dismiss the Section 1983 equal protection claim for failure to state a claim is denied.

**D.      Statute of Limitations**

*1. Title VII Claims*

In New York, an employee must file an EEOC charge within 300 days[3] after the alleged unlawful employment action occurred.  *See* 42 U.S.C. § 2000e-5(e)(1).  If a plaintiff files an EEOC charge that is timely as to any incident of discrimination, the continuing violations exception treats any related "incident of discrimination in furtherance of an ongoing policy of discrimination" as timely as well, "even if they would be untimely standing alone."  *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *abrogated in part on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011).  The continuing violations exception requires showing "specific discriminatory policies or mechanisms such as discriminatory seniority lists, or discriminatory employment tests."  *Id.* (internal citations omitted); *see also Askew v. New York*, No. 1:09-CV-553, 2013 WL 450165, *7 (N.D.N.Y. Feb. 6, 2013) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)) ("[T]he mere allegation of the existence of such a policy would be sufficient to withstand a challenge for failure to state a claim . . .").  The exception does not apply, however, to "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism."  *Id.*; *but see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (applying the continuing violations doctrine to "serial violations").

---

[3] The EEOC charge does not have a date on it and the parties have indicated that it was issued either on or around May 18, 2012 or sometime before May 2, 2012.  Defendants argue that July 22, 2011 is the cutoff date for the statute of limitations.  *See* Dkt. No. 11-13 at 18.

Hostile work environment claims are treated with a different approach because "[t]heir very nature involves repeated conduct." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115, 117 (2002) ("It does not matter, for purposes of [Title VII], that some of the component acts of the hostile work environment fall outside the statutory time period"). Hostile work environment claims are judged by the cumulative affect of individual acts which may not be themselves actionable, but together amount to a one "unlawful employment practice." *See* 42 U.S.C. § 2000e-5(e)(1). To file a timely hostile work environment claim, the plaintiff need only show that one of the contributing acts occurred within the 300 day statutory requirement. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 117.

Plaintiff has listed several alleged instances of discriminatory or retaliatory conduct in the workplace starting after Defendant Tupaj assumed a supervisory role in early 2007. *See* Dkt. No. 9 at 5-8; Dkt. No. 11-8 at 3. Plaintiff alleges discriminatory conduct from at least nine named co-workers. *See* Dkt. No. 9 at 5-8. The alleged conduct includes, among others, comments about Plaintiff's national origin; co-workers placing objects near Plaintiff's work station that she considered offensive; requiring Plaintiff to provide extended notice for sick leave; denying Plaintiff from participating in training opportunities; and Defendant Tupaj's refusal to address Plaintiff's seniority after her transfer to Albany. *See id.* Plaintiff alleges that after she was transferred from Ray Brook to Albany, the same type of discriminatory conduct continued to occur because she "had made it known that [this conduct] offended her when she was assigned to Ray Brook." *See* Dkt. No. 9 at 7.

Plaintiff asserts that this conduct was the result of a policy to tolerate, condone, and encourage such conduct established and implemented by Defendants Tupaj and Gerould and that Defendant DEC "fostered the pervasively hostile work environment by failing to take action to

remedy the situation and neglecting to provide diversity training." *See* Dkt. No. 9 at 8.  This alleged discriminatory policy of the DEC is sufficient to invoke the continuing violations exception at the pleading stage.  Plaintiff's transfer from Ray Brook to Albany does not establish a new, distinct continuing violation because the alleged conduct, the supervisors, and the alleged policy of the DEC remained essentially the same at each location.  *See Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994) (finding a continuing violation even after plaintiff's three-year absence because the plaintiff "suffered the same kinds of harassment . . . under the aegis of some of the same supervisory personnel").

Based on the foregoing, the Court denies Defendants' motion to dismiss the discriminatory conduct contributing to the alleged Title VII violations occurring before July 22, 2011.

### 2. HRL Claims

New York has adopted the continuing violation doctrine for HRL violations, s*ee Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 465 (S.D.N.Y. 2005).  Since Plaintiff has alleged a continuing pattern of illegal conduct under the HRL, Defendants' motion to dismiss Plaintiff's HRL claims accruing before October 24, 2009 is denied.

### 3. Equal Protection

In their reply brief, Defendants asserted a statute of limitations defense for Plaintiff's equal protection claim.  *See Compania del Bajo Caroni (Caromin), C.A. v. Boliviarian Republic of Venez.*, 341 Fed. Appx. 722, 724 (2d Cir. 2009) ("A district court enjoys broad discretion [] to consider arguments made for the first time in a reply brief").  Section 1983 claims arising in New York are subject to a three-year statute of limitations.  *See Pearl v. City of Long Beach*, 296 F.3d

76, 79 (2d Cir. 2002); N.Y. C.P.L.R. § 214 (McKinney 2013).

While Plaintiff's failure to include dates of events listed in her complaint does not lead to dismissal of her claims at the pleading stage, the previously adjudicated DHR complaints provide a timeline for the conduct. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses"). Defendants contend that conduct that was adjudicated in the August 2008 and October 2008 DHR complaints occurred prior to the three year limitation for Section 1983 claims. Although Defendants correctly state that Section 1983 claims in New York are governed by a three-year statute of limitations, Defendants fail to address the continuing violation doctrine.

"Under the continuing violation doctrine, 'if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)). In the present matter, since it is unclear whether the alleged conduct would constitute a continuing violation and because this argument was first raised in Defendants' reply thereby depriving Plaintiff an opportunity to respond to the argument, the Court finds that dismissal on this ground is inappropriate at this time. *See Allen v. Egan*, 303 F. Supp. 2d 71, 79 (D. Conn. 2004) ( "Determining whether the events comprising the basis for [plaintiff's] claim are part of a single, continuing course of conduct is fact-intensive, and therefore inappropriate at this stage of the proceedings. Defendants may, of course, re-assert this defense in a properly supported motion under Rule 56 of the Federal Rules of Civil Procedure"); *Bloom v. N.Y. City Bd.*

*of Educ.*, No. 00 Civ. 2728, 2003 WL 1740528, *10 (S.D.N.Y. Apr. 2, 2003) (denying motion to dismiss as premature where the plaintiff alleged a continuing violation and set forth at least one timely adverse employment action alleged to be discriminatory).

Based on the foregoing, Defendants' motion to dismiss Plaintiff's equal protection claim as untimely is granted in part and the events adjudicated in the two 2008 DHR claims are dismissed with regards to Plaintiff's equal protection claim.

## E.     Eleventh Amendment Immunity

The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).  This immunity extends to both state agencies and officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest.  *See, e.g.*, *Daisernia v. State of N.Y.*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (citations omitted).  Further, "[t]o the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) (citations omitted). Although this immunity bars recovery of "retroactive monetary relief" against a state, it does not shield against claims seeking "prospective injunctive relief."  *Hutto v. Finney*, 437 U.S. 678, 690 (1978).

### 1. Section 1983 Claims

Plaintiff is seeking "all forms of relief recoverable under [Section 1983] including back

pay, front pay and compensatory damages." *See* Dkt. No. 9 at 15. Plaintiff has asserted Section 1983 equal protection claims against the DEC and Defendant Martens in his official capacity as head of the DEC. *See id.* at 3. Plaintiff does not indicate whether Defendants Gerould and Tupaj are being sued in their individual or official capacities. *See id.* Defendants ask this Court to infer that Plaintiff's failure to specifically indicate the capacity in which Defendants Gerould and Tupaj are being sued should result in the determination that they are being sued in their official capacities. *See* Dkt. No. 11-13 at 20.

It is well-established that, on a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor. *See Scutti Enters., LLC. v. Park Place Entm't Corp.*, 322 F.3d 211, 214 (2d Cir. 2003). To the extent that Plaintiff has brought this claim against Defendants Gerould and Tupaj in their official capacities, the claims are dismissed. To the extent that the claims are brought against these Defendants in their individual capacities, however, dismissal is inappropriate at this time. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's official capacity equal protection claims for monetary damages. Further, the Court dismisses Plaintiff's official capacity equal protection claims against Defendants Martens and DEC for monetary damages.

### 2. HRL Claims

"[T]he New York Human Rights Law includes no waiver of the state's [Eleventh Amendment] immunity to suit in federal court." *Lambert v. Office of Mental Health*, No. 97–CV–1347, 2000 WL 574193, *7 (E.D.N.Y. Apr. 24, 2000). Therefore, Defendants' motion to dismiss Plaintiff's HRL discrimination and retaliation claims due to Eleventh Amendment immunity is granted in part and Plaintiff's HRL discrimination and retaliation claims against

Defendant DEC and the individual Defendants sued in their official capacities are dismissed.[4]

## F.    Personal Involvement

Defendants argue that Plaintiff failed to allege the personal involvement of Defendants Gerould and Tupaj.  *See* Dkt. No. 11-13 at 20.  Plaintiff alleges that Defendant Gerould minimized the Affirmative Action Office's finding of hostile work environment by calling it "embellished."  *See* Dkt. No. 9 at 6.  Plaintiff asserts that Defendant Tupaj minimized the importance of counseling memos issued to other dispatchers in response to the Affirmative Action Office's finding by calling them a "slap on the hand."  *See id.*  Further, Plaintiff claims that Defendant Tupaj criticized Plaintiff for requesting sick leave in advance and required her to provide doctors notes for sick leave absences, which was not required of other employees.  *See id.* at 7.  Plaintiff alleges that Defendant Tupaj "refused to address Plaintiff's seniority after her transfer to Albany."  *See id.* at 8.  Moreover, Plaintiff claims that both Defendants Tupaj and Gerould "fostered the pervasively hostile work environment by engaging in the improper conduct [themselves] and failing to take action to remedy the situation."  *See id.*  Defendant Fanelli is only named in the caption and nowhere in the body of the complaint.  *See id.* at 1.  The only mention of Defendant Martens in the complaint is as follows: "Defendant Joe Martens is the Commissioner of the Dept. of Environmental Conservation and is sued in his official capacity as head of the Dept. of Environmental Conservation."  *See id.* at 9.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

---

[4] Plaintiff's HRL aid and abet claims against Defendants Tupaj and Gerould in their individual capacities are not dismissed on this ground.

1994) (quotation and other citations omitted).  A defendant in a supervisory position may be found personally involved if:

> The defendant may have directly participated in the infraction, . . . after learning of the [alleged constitutional] violation through a report or appeal, may have failed to remedy the wrong, . . . [if he] created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue, . . . [or if he] was grossly negligent in managing subordinates who caused the unlawful condition.

*Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986) (internal citations omitted).  Merely naming a defendant as a party to the action without any further indication of participation in constitutional violations is insufficient pleading for purposes of personal involvement.  *See Jaffer v. Chem. Bank,* No. 93 CIV. 8459, 1994 WL 392260, *3 (S.D.N.Y. July 26, 1994) (citations omitted).

### 1. Equal Protection

Plaintiff claims that both Defendants Tupaj and Gerould – who were in supervisory positions during the relevant time periods – knew of the alleged discriminatory conduct against Plaintiff and that each of them failed to take adequate action to remedy the conduct of Plaintiff's coworkers.  *See* Dkt. No. 9 at 6–8.  Rather than relying on a "formulaic recitation" of the elements of the claim as Defendants suggest, Plaintiff provided specific factual allegations of instances where the Defendants failed to take adequate remedial measures.  *See id.* at 6 (noting the lack of action after the Affirmative Action Bureau's probable cause finding of discriminatory conduct).  These factual allegations, coupled with the allegation of condoning and fostering a pervasively discriminatory workplace, sufficiently plead Defendants Tupaj and Gerould's personal involvement.  However, since Plaintiff only mentions Defendants Martens and Fanelli in the list

of parties and the caption, Defendants' motion to dismiss the Section 1983 equal protection claim for lack of personal involvement is granted as to Defendants Martens and Fanelli. *See Jaffer*, 1994 WL 392260, at *3 (holding that "[w]hen a complaint's caption names a defendant but the complaint does not indicate that the named party injured the plaintiff or violated the law, the motion to dismiss must be granted") (citations omitted).

### 2. HRL Aid and Abet

While an individual employee is not ordinarily subject to suit under the HRL, "[u]nder the aiding and abetting provision of NYHRL, an individual employee who actually participates in the conduct giving rise to a discrimination claim may be held personally liable." *Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 427 (S.D.N.Y. 2008); *see also* N.Y. EXEC. LAW § 296(6) (McKinney 2013) ("It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article"). In claims regarding the actions of a supervisor, a plaintiff need not allege that the said supervisor personally carried out the discriminatory conduct. *See Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 384 (S.D.N.Y. 1999). "Rather, the case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation' under HRL § 296(6)." *Id.*

As the analysis for personal involvement under HRL § 296(6) is essentially the same as a Section 1983 equal protection claim, the Court finds that Plaintiff has sufficiently pleaded Defendants Gerould and Tupaj's personal involvement. As such, the Court denies Defendants' motion to dismiss Plaintiff's HRL aid and abet claim.

## G. Duplicative Claims

A Section 1983 claim may not "be brought to vindicate rights conferred only by a statute that contains its own enforcement structure, such as Title VII." *Alvarado v. Metro. Transp. Auth.*, No. 07 Civ. 3561, 2012 WL 1132143, *16 (S.D.N.Y. Mar. 30, 2012). Although Title VII claims are not cognizable against individuals, individuals may be held liable under Section 1983 for certain discriminatory acts. *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004); *see also Gierlinger v. N.Y. State Police*, 15 F.3d 32, 34 (2d Cir. 1994) ("A Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action, so long as the § 1983 claim is based on a distinct violation of a constitutional right"). Thus, claims against individual defendants, "sued in their individual capacities under § [] 1983, are not automatically dismissable." *Id.*

Since Plaintiff has withdrawn her Title VII claims against the individual Defendants, her equal protection claims against Defendants Gerould and Tupaj in their individual capacities are not duplicative of her Title VII claims. *See* Dkt. No. 15-5 at 25 n.5. Accordingly, Defendants' motion to dismiss Plaintiff's Section 1983 equal protection claims against Defendants Gerould and Tupaj as duplicative of her Title VII claims is denied.

## H. Election of Remedies

"Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action . . . unless such person had filed a complaint hereunder or with any local commission on human rights." N.Y. EXEC. LAW § 297(9) (McKinney 2013). Plaintiff incorrectly argues that the election of remedies doctrine seeks to prevent only identical claims. *See* Dkt. No. 15-5 at 28. To the contrary, "[c]laims need not be identical in order to be barred by the state or

city election of remedies provision." *Rosario v. N.Y.C. Dep't of Educ.*, No. 10 Civ. 6160, 2011 WL 1465763, *2 (S.D.N.Y. Apr. 15, 2011) ("Since the underlying facts of the claim [] brought before the NYSDHR are almost identical to those alleged in this case, the plaintiff's state law claims are barred pursuant to NYSHRL § 297(9)").

Plaintiff filed discrimination claims with the DHR on or about August 27, 2008, October 8, 2008, and March 30, 2010. *See* Dkt. Nos. 11-5, 11-6, 11-9. The factual allegations in these claims are set out in Part II(A) of this opinion. *See infra* Part II(A). Since these allegations have been previously adjudicated by the DHR, Defendants' motion to dismiss Plaintiff's HRL claims insofar as they relate to the factual allegations listed in Part II(A) is granted.[5]


I.       **Personal Jurisdiction over Defendant Gerould**

Rule 4 of the Federal Rules of Civil Procedure states that an individual may be served in a judicial district of the United States by "following state law for serving a summons . . . in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e). Rule 308 of the New York Civil Practice Law and Rules ("CPLR") states that an individual may be served:

> by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . .

N.Y. C.P.L.R. § 308(2) (McKinney 2013); *see also* N.Y. C.P.L.R. § 308(6) ("'[A]ctual place of business' shall include any location that the defendant, through regular solicitation or advertisement, has held out as its place of business"). Additionally, service may be effected by

---

[5] This dismissal is only applicable to the HRL claims and does not have any impact on Plaintiff's Title VII or equal protection claims.

"delivering a copy of the summons and of the complaint to the individual personally." FED. R. CIV. P. 4(e)(2)(A). The purpose of the service requirements is "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Durant v. Traditional Invs., Ltd.*, No. 88 CIV. 9048, 1990 WL 33611,*3 (S.D.N.Y. Mar. 22, 1990) ("[W]hen a defendant receives actual notice of a lawsuit brought against him, technical imperfections with service will rarely invalidate the service").

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a defendant may assert insufficiency of process by motion. "The burden is on the plaintiff to establish that his service was not insufficient. If the court determines that it was insufficient, the court may, but is not required to, dismiss the action. Alternatively, the court may grant leave to allow the plaintiff to cure the insufficiency." *Sajimi v. City of New York*, No. 07–CV–3252, 2011 WL 135004, *3 (E.D.N.Y. Jan. 13, 2011) (internal citations omitted).

In the present matter, summonses were issued by the Court on October 25, 2012. *See* Dkt. No. 3. Further, the record indicates that, on November 16, 2012, Plaintiff attempted to serve Defendant Gerould at the Albany office, and this service was accepted by Jonathan Binder, a senior attorney with Defendant DEC. *See* Dkt. No. 5 at 6. On that same date, Plaintiff served the New York State Attorney General. *See id.* at 1. According to Defendant Gerould's affidavit, however, he was transferred from the Central Office in Albany to the Avon Office in April of 2011. *See* Dkt. No. 11-12 at ¶ 2. As such, Defendant Gerould claims that service was improper because the Albany Office was no longer his "actual place of business." N.Y. C.P.L.R. § 308(2).

As Defendants correctly point out, the term "actual place of business" has been defined as a place where the defendant is regularly physically present or regularly transacts business. *See Sajimi*, 2011 WL 135004, at *3 (citation omitted). Although Defendant Gerould undoubtedly would have been properly served between May 2007 and April 2011 when he worked for the DEC out of the Albany Office, service was not proper on November 16, 2012 – one year and eight months after he had been transferred to the Avon Office. *See Pierce v. Village of Horseheads Police Dept.*, 107 A.D.3d 1354, 1355-56 (3d Dept. 2013) (citations omitted); *Lange v. Town of Monroe*, 213 F. Supp. 2d 411, 420-21 (S.D.N.Y. 2002). As such, Plaintiff failed to properly serve Defendant Gerould and the Court does not have personal jurisdiction over him. Since service was not made within 120 days of filing the complaint, the Court must decide whether to dismiss the complaint against Defendant Gerould or whether Plaintiff should be provided with an extension of time to effect proper service.[6]

Rule 4 provides, in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

However, even, as here, "where good cause does not exist, courts remain free to exercise

---

[6] The Court notes that on May 28, 2013, Plaintiff apparently served Defendant Gerould with a summons and the amended complaint. *See* Dkt. No. 15-4. As Defendant correctly points out, this service was not effected within 120 days of filing the complaint. Rule 4(m) and the relevant case law, however, clearly articulate that the availability of a plaintiff to serve the complaint beyond the 120 day limit is a privilege that must be granted by the Court. *See Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007). As such, without first obtaining permission from the Court, Plaintiff's attempted service of the complaint on Defendant Gerould on May 28, 2013 was improper.

their discretion in extending the time for service."  *Feingold v. Hankin*, 269 F. Supp. 2d 268, 277 (S.D.N.Y. 2003); *see also Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007) ("[A] district court may grant an extension in the absence of good cause, but it is not required to do so" (citation omitted)).  In determining whether a discretionary extension is appropriate in the absence of good cause, courts consider the following four factors: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision."  *Beauvoir v. U.S. Secret Service*, 234 F.R.D. 55, 58 (E.D.N.Y. 2006) (citations omitted); *see also Feingold*, 269 F. Supp. 2d at 277 (citation omitted). With respect to the first factor, "'[c]ourts have consistently considered the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis.'" *Id.* (citations omitted).  Indeed, this factor alone may be sufficient to justify extending the time for service.  *See id.* (citation omitted); *see also* Advisory Committee Notes to Fed. R. Civ. Proc. 4(m) ("Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action . . .").

In the present matter, the first, second and fourth factors all weigh in favor of granting an extension to serve.  First and most important, many of Plaintiff's claims against Defendant Gerould would be time barred because of the applicable statute of limitations.  Second, it is apparent that Defendant Gerould had actual notice of the action, which he admits in his affidavit in support of the motion to dismiss.  *See* Dkt. No. 11-12 at ¶ 5.  The third factor weighs against Plaintiff because Defendant Gerould first raised this issue in the December 28, 2012 motion to dismiss the original complaint.  However, the Court also finds that Defendant Gerould would not

be prejudiced by an extension of time to serve him and that a fair balance of the four factors favors granting Plaintiff a discretionary extension under Rule 4(m).  As such, Plaintiff will be given thirty days in which to effect service upon Defendant Gerould and Defendants' motion to dismiss on this ground is denied.  If Plaintiff fails to effect service within thirty days of the filing date of this Memorandum-Decision and Order, Defendant Gerould will be dismissed from this action, without further order of the Court.


**J.      Supplemental Jurisdiction**

Defendants assert that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state HRL claims because all federal claims should be dismissed.  *See* Dkt. No. 11-13 at 22.  Since not all of Plaintiff's federal claims have been dismissed, Defendants' motion for this Court to decline supplemental jurisdiction is denied.


**K.      Leave to Re-plead**

Rule 15 of the Federal Rules of Civil Procedure states that a court should freely grant leave to re-plead "when justice so requires."  FED. R. CIV. P. 15(2).  It is "well-established that 'outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts.'"  *Harrison v. Enventure Capital Group, Inc.*, 666 F. Supp. 473, 479 (W.D.N.Y. 1987) (quoting *Nagler v. Admiral Corporation*, 248 F.2d 319, 322 (2d Cir. 1957)).  For this reason, "dismissals for insufficient pleadings are ordinarily with leave to replead."  *Stern v. General Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991).  Leave to amend a pleading need not be granted, however, if it would be futile to do so.  *See O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 69 (2d Cir. 2002) (citing *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995)).

The amended complaint before the Court is Plaintiff's second pleading. *See* Dkt. No. 9. As discussed, the majority of claims dismissed were on substantive grounds and not due to inadequate pleading. First, Plaintiff voluntarily withdrew her Title VII claims against the individual Defendants. *See* Dkt. No. 15-5 at 25 n.5. Second, Plaintiff's equal protection claim for events previously adjudicated in two 2008 DHR claims are dismissed for reasons of statutory limitations. Third, several of Plaintiff's claims against Defendants in their official capacities are precluded by the Eleventh Amendment. Fourth, portions of Plaintiff's HRL claims are dismissed based on the election of remedies doctrine, not due to insufficient pleading. As to Plaintiff's failure to plausibly allege Defendants Martens and Fanelli's personal involvement, Plaintiff has failed to provide the Court with any reasons to grant leave to re-plead. Moreover, Defendants would be prejudiced due to the length of time this action has already been pending and this issue was brought to Plaintiff's attention in Defendants' motion to dismiss the original complaint. Although Plaintiff filed an amended complaint in response to the motion, she failed to remedy this defect despite being placed on notice through Defendants' motion.

Based on the foregoing, the Court denies Plaintiff's request for leave to re-plead.


## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss the amended complaint is **GRANTED in part** and **DENIED in part** in accordance with this Memorandum-Decision and Order;[7] and the

---

[7] Plaintiff's remaining claims are Title VII retaliation, hostile work environment, and disparate treatment against Defendants Martens and DEC; Section 1983 equal protection claims

(continued...)

Court further

ORDERS that Plaintiff's request for leave to re-plead is **DENIED**; and the Court further

ORDERS that Plaintiff shall have **THIRTY (30) DAYS** from the filing date of this Memorandum-Decision and Order to effect service on Defendant Gerould and file proof of such service with the Court; and the Court further

ORDERS that, if Plaintiff fails to effect service on Defendant Gerould within **THIRTY (30) DAYS** of the filing date of this Memorandum-Decision and Order, Defendant Gerould will be dismissed from this action, without further order of the Court.

ORDERS that the Clerk of the Court shall serve the parties with a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 20, 2013
  Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[7](...continued)
against Defendants Gerould and Tupaj, individually; and HRL § 296(6) aid and abet claims against Defendants Gerould and Tupaj relating to events not mentioned in the 2008 DHR complaints.