**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ALELIE SERRANO,**

                              **Plaintiff,**

    vs.                                                   **8:12-CV-1592
                                                                   (MAD/CFH)**

**NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION;
COMMISSIONER JOE MARTENS; MAJOR
STEVEN GEROULD; and ERIC TUPAJ,
LIEUTENANT, DIVISION OF LAW
ENFORCEMENT,**

                              **Defendants.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

**OFFICE OF LOWELL R. SIEGEL**          **LOWELL R. SIEGEL, ESQ.**
23 Indian Ladder Drive
Altamont, New York 12009
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**              **JAMES SEAMAN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff, Alelie Serrano, commenced this action against her employer, the New York State Department of Environmental Conservation ("DEC"), and various other DEC employees on October 24, 2012. *See* Dkt. No. 1. After being terminated from her position on January 25, 2013, Plaintiff filed an amended complaint on February 13, 2013. *See* Dkt. No. 9. Defendants filed a motion to dismiss the amended complaint, arguing several grounds for dismissal, including for

lack of personal jurisdiction over Defendant Major Steven Gerould due to insufficient service of process. *See* Dkt. No. 11-13 at 26. On December 20, 2013, the Court issued a Memorandum-Decision and Order agreeing with Defendants that Plaintiff had failed to effect proper service upon Defendant Gerould, and directed Plaintiff to properly serve him within thirty days. *See* Dkt. No. 17. The Court expressly warned that, if Plaintiff failed to effect proper service within the allotted thirty days, Defendant Gerould would be dismissed from this action without further order of the Court. *See id.* at 34. Currently before the Court is Defendant Gerould's motion to dismiss the amended complaint for lack of personal jurisdiction, in which he asserts that Plaintiff still failed to effect proper service.

## II. BACKGROUND

**A.      Plaintiff's Allegations and Initial Service Upon Defendant Gerould**

Plaintiff was employed at the DEC as a dispatcher from October 2006 until January 2013. *See* Dkt. No. 9 at 4. As the only dispatcher at the DEC of Puerto Rican/Hispanic descent during that time period, the main reason Plaintiff was hired was for her fluency in Spanish. *See id.* at 5. From October 2006 until February 2010, Plaintiff worked at the Ray Brook office, and then was transferred to Albany. *See id.* at 4. Defendant Gerould supervised the Central Dispatch Unit in the Central Office in Albany from May 2007 to April 2011, and had no supervisory control over the Central Dispatch Unit after his relocation in April 2011. *See* Dkt. No. 11-12 at 1.

On March 4, 2008, Plaintiff filed a charge of discrimination with the Affirmative Action Office of the DEC. *See* Dkt. No. 11-5 at 7. The Affirmative Action Office determined that Plaintiff had a valid claim of discrimination, and recommended remedial action to ensure an end to the discriminatory behavior. *See id.* at 8-9. Subsequently, on August 27, 2008 Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR"), alleging retaliation for

having filed an Affirmative Action complaint. *See id.* at 1. Then, on October 8, 2008, Plaintiff filed another charge with the DHR alleging discrimination and harassment. *See* Dkt. No. 11-6 at 1. On March 23, 2009, the DHR released a determination in which it said, "there is probable cause that Complainant may have been subjected to discriminatory treatment, including retaliation, and said treatment may be ongoing." *See* Dkt. No. 11-7 at 6. On March 30, 2010, Plaintiff filed another charge of discrimination with the DHR, *see* Dkt. No. 11-10 at 1, but the DHR found no probable cause of discrimination because the allegations were already litigated during the December 2009 Division Hearing. *See* Dkt. No. 11-11 at 2.

Finally, in May 2012, Plaintiff filed a charge of discrimination and retaliation based on her race/national origin with the Equal Employment Opportunity Commission ("EEOC"). *See* Dkt. No. 11-3 at 2. The EEOC declared that it was unlikely that it would find a violation of law because "most of Plaintiff's allegations are untimely (beyond 300 days) or have already been investigated by the NYSDHR." *See* Dkt. No. 11-2 at 2. On July 26, 2012, the EEOC issued a right to sue letter, allowing Plaintiff ninety days to file a suit against the DEC. *See id.* at 3. Plaintiff commenced this action on the ninetieth day, October 24, 2012. *See* Dkt. No. 1. On January 4, 2013, Plaintiff filed another hostile work environment and discrimination complaint with the Affirmative Action Office of the DEC. *See* Dkt. No. 11-13 at 6. Shortly after, on January 25, 2013, Plaintiff was terminated from her position for "persistent and unfounded complaints that have disrupted the workplace, conduct that undermined the mission of the unit, insubordination, and time and attendance concerns." *See* Dkt. No. 15-3 at 2.

Plaintiff alleges that Defendant Gerould contributed to the hostile work environment by "engaging in improper conduct himself[,] . . . failing to take action to remedy the situation, . . . [and] minimizing the Affirmative Action Bureau's determination that Plaintiff was subjected to a

3

hostile work environment." *See* Dkt. No. 9 at ¶¶ 38-39. Plaintiff initially attempted to serve Defendant Gerould at the Albany Office on November 16, 2012; service was accepted on Defendant Gerould's behalf by Jonathan Binder, a senior attorney with the DEC. *See* Dkt. No. 5 at 6. However, Defendant Gerould argued that the Albany Office was no longer his "actual place of business," as required by Rule 308 of the New York Civil Practice Law and Rules ("CPLR") in order to effect service, because he was transferred to the Avon Office in April 2011. *See* Dkt. No. 11-12 at ¶ 2; N.Y. C.P.L.R. § 308(2) (McKinney 2013). On May 28, 2013, Plaintiff attempted to personally serve Defendant Gerould at his residence with a summons and the amended complaint. *See* Dkt. No. 15-4.

**B.     The Court's December 20, 2013 Memorandum-Decision and Order**

On December 20, 2013, the Court ruled on Defendant Gerould's motion to dismiss for lack of personal jurisdiction. *See* Dkt. No. 17. As stated above, Plaintiff attempted to serve Defendant Gerould at the Albany Office in November 2012, but he had transferred out of that office in April 2011. Therefore, the Court found that, because the Albany Office was no longer Defendant Gerould's "actual place of business," service was ineffective because N.Y. C.P.L.R. § 308(6) defines "actual place of business" as "any location that the defendant, through regular solicitation or advertisement, has held out as its place of business." In addition, Plaintiff's attempted service of a summons and the amended complaint on May 28, 2013 was deemed improper because service had not occurred within 120 days of filing the complaint, as required by Federal Rule of Civil Procedure 4(m). *See* Dkt. No. 15-4; Dkt. No. 17 at 32 n.6. The Court granted Plaintiff an extension to effect proper service of process upon Defendant Gerould, and required that service be completed within thirty (30) days of the filing date of the Memorandum-Decision and Order. *See* Dkt. No. 17 at 34. The Court advised Plaintiff that "[i]f [she] fails to effect service on

4

Defendant Gerould within thirty days . . . Defendant Gerould will be dismissed from this action, without further order from the Court." *See id*.

**C.     Plaintiff's Second Attempt to Effect Service**

In late December 2013, Defendant Gerould and his wife traveled out of state to visit friends and family, and they did not return to New York until January 2014. *See* Dkt. No. 27-1 at ¶ 6. While the couple was away, their twenty-one year old daughter, Kaitlin, remained at their home. *Id.* at ¶¶ 3, 7. Their home address is 6758 Big Tree Road in Livonia, New York. *Id*. at ¶ 3. According to Defendant Gerould, while in Florida, he received a phone call from a male process server looking to serve him with a summons and the amended complaint for this lawsuit. *Id*. at ¶ 10. Defendant Gerould authorized the male process server to take the papers to the DEC office in Avon, New York and give them to Captain John Burke. *Id*. Upon his return to New York, Defendant Gerould spoke with Captain Burke, who informed him that he never received any paperwork in connection with this lawsuit. *Id.* at ¶ 12. The Affidavit of Service filed by the first process server employed by Plaintiff, Joshua Maziarz, shows that he attempted to personally serve Defendant Gerould at "6758 Bigtree Lane in Livonia, NY," on the following dates and times: 12/27/2013 at 9:30 pm, 12/30/2013 at 5:05p.m. and 7:30 p.m., and 01/04/2014 at 9:50 p.m. *See* Dkt. No. 27-3. Plaintiff concedes, however, that the first process server failed to effect service. *See* Dkt. No. 28-1 at 3.

Plaintiff employed a second process server, Jennifer Gorankoff, who went to Defendant Gerould's residence on the following dates and times: 01/11/2014 at 5:50 p.m., 01/13/2014 at 12:15 p.m., and 01/14/2014 at 3:25 p.m. *See* Dkt. No. 27-4. The address listed on Process Server Gorankoff's affidavit is "6758 Big Tree Lane, Rochester, NY." *Id*. Defendant Gerould's daughter, Kaitlin, confirms that on one occasion, a female process server came to the house

5

looking for her father. *See* Dkt. No. 27-6 at ¶ 7. Kaitlin noted that the woman was carrying paperwork, but she never gave her the paperwork or asked Kaitlin if she would take it. *Id.* Process Server Gorankoff contends that she did not leave the summons and amended complaint with Kaitlin because "[she] did not believe that the female resident was over the age of eighteen years." *See* Dkt. No. 28-3 at ¶ 7. Instead, Process Server Gorankoff resorted to the substitute service known as "nail and mail," pursuant to CPLR § 308(4); she affixed the summons and amended complaint to the door on January 14, 2014, and mailed them via certified mail the following day. *See* Dkt. No. 28-3 at ¶¶ 9-12; Dkt. No. 21; N.Y. C.P.L.R. § 308(4).

When he returned to New York, Defendant Gerould searched and could not find the amended complaint. *See* Dkt. No. 27-1 at ¶ 9. Defendant Gerould contends that he never received the summons and amended complaint in the mail. *See id.* at ¶¶ 18-23. Further, Defendant Gerould argues that the incorrect mailing address, *i.e.* Big Tree Lane instead of Big Tree Road, could have resulted in him never receiving the mailing because there is a Big Tree Lane in the neighboring town of Geneseo, New York. *Id.* at ¶ 20. Although Plaintiff submitted the U.S. Postal Service ("USPS") Certified Mail Receipt containing the correct address (6758 Big Tree Road), Defendant Gerould discovered from the USPS Tracking website that the mailing was returned to the sender on February 3, 2014. *See* Dkt. No. 28-4; Dkt. No. 27-1 at ¶¶ 21-23. On February 18, 2014, Defendant Gerould states that he found a copy of the summons and amended complaint lying between the inside door and the storm door on the side of his house. Dkt. No. 27-1 at ¶ 14.

Defendant Gerould argues that Plaintiff failed to exhaust the New York state law due diligence requirement before resorting to "nail and mail" service. *See* Dkt. No. 27-7. Further, Defendant Gerould contends that, even if Plaintiff did meet the due diligence requirement, service was nonetheless defective under the requirements of CPLR § 308(4) because both Affidavits of

6

Service contain the wrong mailing address and he never received a mailing of the summons and amended complaint. *See id.*

### III. DISCUSSION

**A.  Standard of Review**

Defendant Gerould seeks dismissal of the amended complaint for lack of personal jurisdiction and insufficient process pursuant to Federal Rules of Civil Procedure 12(b)(2) and (5) respectively. "'Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.'" *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (quotation omitted). In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, the court "must look to matters outside the complaint to determine whether it has jurisdiction." *Allen v. Nassau Cnty. Executive Office*, No. CV 09-1520(JFB)(ARL), 2011 WL 1061019, *4 (E.D.N.Y. Feb. 15, 2011). On a Rule 12(b)(5) motion to dismiss for insufficient service of process, the "plaintiff bears the burden of establishing that service was sufficient." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005); *see also Sajimi v. City of New York*, No. 07-CV-3252, 2011 WL 135004, *3 (E.D.N.Y. Jan. 13, 2011) ("The burden is on the plaintiff to establish that his service was not insufficient").

**B.  Service of Process under New York State Law**

Rule 4(e)(1) of the Federal Rules of Civil Procedure permits a plaintiff to serve an individual defendant by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Rule 308 of the New York Civil Practice Law and Rules ("CPLR") states that an individual may be served either by

7

delivering the summons and complaint to the individual personally, N.Y. C.P.L.R. § 308(1)

(McKinney 2013), or:

> by delivering the summons within the state of a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence . . .

N.Y. C.P.L.R. § 308(2). Further, if service under paragraphs one and two cannot be made with due diligence, service can be made

> by affixing the summons to the door of . . . [the] dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence . . . [P]roof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such affixing or mailing, whichever is effected later . . .

*Id*. at § 308(4).

The purpose of the service requirement is "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Durant v. Traditional Invs. Ltd.*, No. 88 CIV. 9048, 1990 WL 33611, *3 (S.D.N.Y. Mar. 22, 1990) ("[W]hen a defendant receives actual notice of a lawsuit brought against him, technical imperfections with service will rarely invalidate the service"). However, "neither actual notice nor absence of prejudice to the defendant provides an adequate basis for excusing noncompliance with [the rules]." *Mused v. U.S. Dep't of Agric. Food & Nutrition Serv*., 169 F.R.D. 28, 34 (W.D.N.Y. 1996).

**C.    Due Diligence**

"New York courts have not adopted a per se rule as to what constitutes 'due diligence' under Section 308 . . . [and] whether attempts to effectuate service constitute due diligence is

8

determined on a case-by-case basis." *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 261 (E.D.N.Y. 2011) (citations omitted). In addition, "to determine whether [a plaintiff] exercised due diligence before resorting to 'nail and mail' service, the Court must look to the totality of the circumstances." *Id*. In determining whether the process server's attempts at service constitute due diligence, the courts should focus on the quality, not the quantity, of attempts. *McSorley v. Spear*, 50 A.D.3d 652, 653 (2d Dept. 2008) (citation omitted). The requirement of due diligence must be strictly enforced because "'there is a reduced likelihood that a defendant will actually receive the summons when it is served pursuant to CPLR §308(4).'" *Serraro v. Staropoli*, 94 A.D.3d 1083, 1084 (2d Dept. 2012) (quotation and other citations omitted).

The New York Supreme Court Appellate Divisions diverge on their interpretations of what constitutes due diligence. The Second Department, which Defendant Gerould frequently cited in his argument, requires genuine inquiries into the defendant's place of employment and whereabouts in order to satisfy due diligence. *See Serraro v. Staropoli,* 94 A.D.3d 1083, 1085 (2d Dept. 2012) ("For the purpose of satisfying the 'due diligence' requirement . . . it must be shown that the process server made genuine inquiries about the defendant's whereabouts and place of employment") (quoting *Estate of Waterman v. Jones*, 46 A.D.3d 63, 66 (2d Dept. 2007)); *see also Gurevitch v. Goodman*, 269 A.D.2d 355, 356 (2d Dept. 2000) (holding that due diligence was not established when process server made three non-consecutive attempts to serve the defendant at his home because process server did not first attempt to satisfy CPLR § 308(1) or (2) by attempting to effect service at the defendant's place of employment). The Second Department has held that "[s]ervice of process pursuant to the affix-and-mail provisions of CPLR § 308(4) is *only* permitted where service by personal delivery under CPLR § 308(1) or by delivery to a person of suitable age and discretion and a subsequent mailing pursuant to CPLR § 308(2) 'cannot

9

be made with due diligence.'" *Cadlerock Joint Venture, L.P. v. Kierstedt*, 119 A.D.3d 627, 629 (2d Dept. 2014).

Other departments apply a more lenient standard in determining whether a plaintiff has established due diligence. For example, the First Department has found that three attempts to personally serve the defendant at home, at various times when it would reasonably be expected that the defendant would be found at home, constituted due diligence without any inquiry into place of employment. *Hochhauser v. Bungeroth*, 179 A.D.2d 431, 431 (1st Dept. 1992) (citation omitted). In *State of N.Y. Higher Educ. Servs. Corp. v. Upshur*, the Third Department , the due diligence requirement was satisfied when process server went to defendant's home on two weekdays and one Saturday at varying times, and confirmed the correct address with a neighbor. *State of N.Y. Higher Educ. Servs. Corp. v. Upshur*, 252 A.D.2d 333, 337 (3d Dept. 1999). Even the Second Department has been inconsistent in its stringent application of its inquiry into place of employment rule: "Where four attempts to serve the defendant at his residence included an attempt on a late weekday evening and an attempt on an early Saturday morning, it was not necessary that the plaintiff . . . attempt to serve the defendant at his work place." *County of Nassau v. Gallagher*, 43 A.D.3d 972, 973-974 (2d Dept. 2007) (citations omitted).

Despite the differing interpretations of what constitutes due diligence, in general, federal courts look for some evidence that Plaintiff attempted to satisfy the requirements of CPLR sections 308(1) or 308(2) before resorting to the "nail and mail" method found in section 308(4). *See Allstate Ins. v. Rozenberg*, 771 F. Supp. 2d 254 (E.D.N.Y. 2011) (finding nail and mail service acceptable where the plaintiff included in the service affidavit how he attempted to serve the defendant pursuant to CPLR §§ 308(1) and 308(2) prior to resorting to the nail and mail procedure set forth in CPLR § 308(4); the process server confirmed the correct address with the

mailman and asked where the defendant worked, but was "unable to divulge [defendant's] place of employment"). In fact, federal courts appear to have adopted the Second Department's approach in some cases: "[F]ailed attempts to make delivery at a person's residence will normally not qualify as due diligence unless the process server has also tried to ascertain the person's place of employment." *Allstate Ins.*, 771 F. Supp. 2d at 261; *see also Weifang Xinli Plastic Products v. JBM Trading Inc.*, No. 1:11-CV-2710, 2014 WL 4244258, *3 (E.D.N.Y. Aug. 26, 2014).

New York case law generally deals with the "nail and mail" method of service only after the process server attempted to serve a defendant at his or her residence, *and no one was home*. "The very premise of all efforts to serve under CPLR §308(4) is that the person to be served cannot be found at the location." *Allianz Ins. Co. v. Otero*, 353 F. Supp. 2d 415, 421 (S.D.N.Y. 2004). Relevant to the instant case, is that Plaintiff did not attempt to serve Defendant Gerould pursuant to CPLR § 308(2), despite the undisputable opportunity to do so: "Since I did not believe that the female resident was over the age of eighteen years, I declined to service her with process on behalf of Steven Gerould." *See* Dkt No. 28-3 at ¶ 7. By simply inquiring about the young female resident's age, Plaintiff's process server could have ascertained whether or not she was of "suitable age and discretion." New York case law does not permit resorting to the "nail and mail" method of service when there is an opportunity to serve pursuant to CPLR § 308(2). *See Kambour v. Farrar*, 188 A.D.2d 719, 720 (3d Dept. 1992) (finding that substituted service was not authorized because the defendant's mother, "a person of suitable age and discretion," was at defendant's home address on at least one occasion when the process server attempted service); *see also Rossetti v. DeLaGarza*, 117 A.D.2d 793 (2d Dept. 1986) (finding that resort to "nail and mail" service was improper when process server had several opportunities to serve a person of "suitable age and discretion"at the defendant's home).

11

The record before the Court makes clear that the first process server employed by Plaintiff did not successfully effectuate service upon Defendant Gerould, and the second process server failed to exercise "due diligence" prior to resorting to nail and mail. Plaintiff fails to explain why Defendant Gerould could not be served at his place of business, which Defendant Gerould admitted in his previous motion to dismiss was the DEC's Avon Office. Further, the second process server could have undoubtedly complied with section 308(2) by simply asking Defendant Gerould's daughter if she was at least eighteen-years old. Accordingly, the Court grants Defendant Gerould's motion to dismiss for lack of personal jurisdiction.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Gerould's motion to dismiss for lack of personal jurisdiction is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 23, 2015
Albany, New York

*Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge