**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ALELIE SERRANO,**

       **Plaintiff,**

 vs.             **12-CV-1592
                (MAD/CFH)**

**NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION and ERIC
TUPAJ, LIEUTENANT, DIVISION OF LAW
ENFORCEMENT,**

       **Defendants.**
_____

**APPEARANCES:**        **OF COUNSEL:**

**OFFICE OF LOWELL R. SIEGEL**  **LOWELL R. SIEGEL, ESQ.**
23 Indian Ladder Drive
Altamont, New York 12009
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**  **JAMES SEAMAN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

  Plaintiff, Alelie Serrano, commenced this suit against her employer, New York State Department of Environmental Conservation ("DEC"), and various DEC employees on October 24, 2012. Plaintiff was terminated from her position on January 25, 2013, and she filed an amended complaint on February 13, 2013. On December 20, 2013, the Court granted in part and denied in part Defendants' motion to dismiss, leaving the following claims: Title VII retaliation, hostile work environment, and disparate treatment against DEC; section 1983 equal protection

claims against Defendants Gerould and Tupaj, individually; and New York Human Rights Law ("HRL") aid and abet claims against Defendants Gerould and Tupaj. *See* Dkt. No. 17. On February 23, 2015, the Court granted Defendants' motion to dismiss all claims against Defendant Gerould, leaving only Tupaj and DEC as Defendants. *See* Dkt. No. 31. Pending before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 72-1.

## II. BACKGROUND

Plaintiff was employed at DEC as a dispatcher from October 2006 until January 2013. *See* Dkt. No. 72-2 at ¶¶ 21-22, 590. During this time, Plaintiff was the only dispatcher at DEC of Puerto Rican/Hispanic descent. *See* Dkt. No. 9 at ¶ 30. One of the main reasons Plaintiff was hired was because of her fluency in Spanish. *See id.* at ¶ 32. Plaintiff worked in the Ray Brook office from October 2006 until February 2010, when she was transferred to Albany. *See* Dkt. No. 72-2 at ¶¶ 21-22, 405.

On March 4, 2008, Plaintiff filed a complaint with DEC's Affirmative Action Bureau claiming that she had been subjected to racial discrimination and a hostile working environment. *See id.* at ¶ 48. On July 29, 2008, DEC Affirmative Action Officer Juan Abadia issued a memorandum recommending, inter alia, that the Ray Brook unit be provided with sensitivity and non-discrimination training. *See id.* at ¶¶ 79-81.

On August 29, 2008, Plaintiff filed her first complaint (Case No. 10127865) with the New York State Division of Human Rights ("DHR") charging DEC with unlawful discriminatory practices. *See id.* at ¶ 97. On October 14, 2008, Plaintiff filed a second complaint (Case No. 10128843) with DHR again alleging discrimination. *See id.* at ¶ 118. On March 23, 2009, DHR issued a report finding that "there is probable cause that Complainant may have been subjected to discriminatory treatment, including retaliation, and said treatment may be ongoing." Dkt. No. 11-

7 at 6. On March 25, 2010, DHR issued an order recommending dismissal of Plaintiff's two complaints (Case Nos. 10127865 and 10128843). *See* Dkt. No. 76-95. On October 14, 2010, the Commissioner of DHR issued a Notice and Final Order adopting the March 25, 2010 dismissal of those complaints. *See* Dkt. No. 76-96.

On March 30, 2010, five days after DHR recommended dismissal of her two prior DHR charges, Plaintiff filed a third complaint (Case No. 10140417) with DHR, bearing Federal Charge No. 16GB002729. *See* Dkt. No. 72-2. In that complaint, Plaintiff alleged that she had been discriminated against in retaliation for filing her two previous complaints with DHR, *see* Dkt. No. 72-27 at 2, and because of her national origin, *see id.* at 5. Plaintiff also referenced her two prior DHR complaints, *see id.*, and specifically identified numerous acts in support of her claim, including the following: (1) DEC personnel denied her training opportunities, *see id.* at 6, 11, 13-14, 21; (2) an aerosol can of "bullshit repellent" was placed on Sergeant Cranker's desk, *see id.* at 12; (3) DEC employee Alicia Bodmer placed a photo of a target on Plaintiff's work station, *see id.* at 20; (4) DEC employee Ann MacBride struck Plaintiff on the head with a stack of papers, *see id.* at 16; (5) Plaintiff was provided limited opportunities to work overtime, *see id.* at 16-17; and (6) MacBride placed a noose over Plaintiff's work locker, *see id.* at 17. DHR determined that this charge did not establish probable cause of discrimination. *See* Dkt. No. 11-11. On February 14, 2011,[1] the Equal Employment Opportunity Commission ("EEOC") adopted DHR's findings on Plaintiff's third charge (EEOC Charge No. 16G-2010-02729) and issued a right-to-sue letter containing the following language: "This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law

---

[1] A stamp on the right-to-sue letter indicates that DEC received the document on February 17, 2011. Defendants contend, and Plaintiff does not dispute, that Plaintiff would have received the letter no later than February 21, 2011. *See* Dkt. No. 72-1 at 7.

3

based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost." Dkt. No. 72-31 at 37.

On May 18, 2012, Plaintiff filed a charge of retaliation and discrimination based on her race/national origin with the EEOC (EEOC Charge No. 525-2012-00451). *See* Dkt. No. 72-2 at ¶ 472. That charge referenced "recent incidents" of retaliation, harassment, and disparate treatment that had occurred since the fall of 2011. *See* Dkt. No. 74-3 at 5. The EEOC determined it was "unable to conclude that the information establishes a violation of Federal law on the part of Respondent." Dkt. No. 11-2 at 2.

On July 26, 2012, the EEOC issued a second right-to-sue letter, allowing Plaintiff ninety days to file a suit against DEC. *See id.* at 3. Plaintiff commenced this action on the ninetieth day, October 24, 2012. *See* Dkt. No. 1. On January 4, 2013, Plaintiff filed what she describes as another hostile work environment and discrimination complaint with the Affirmative Action Bureau of DEC. *See* Dkt. No. 9 at ¶ 69. On January 25, 2013, Plaintiff was terminated via a letter signed by Director Peter Fanelli stating in part, "[t]he reasons for this decision include your persistent and unfounded complaints that have disrupted the workplace, conduct that undermined the mission of the unit, insubordination, and time and attendance concerns." *See* Dkt. No. 15-3 at 2; *see also* Dkt. No. 72-2 at ¶ 590.

### III. DISCUSSION

**A.    Title VII Claims**

*1. Statute of Limitations*

An employment discrimination suit under Title VII against the government must be filed within ninety days of receiving a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-

5(f)(1). "This requirement is strictly construed and a court may not extend the limitations period in absence of equitable considerations." *Barna v. Morgan*, 341 F. Supp. 2d 164, 167 (N.D.N.Y. 2004) (citing *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984)).

If a plaintiff files an EEOC charge that is timely as to any incident of discrimination, the continuing violation exception permits courts to consider "'claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination,'" *Lugo v. City of New York*, 518 Fed. Appx. 28, 29 (2d Cir. 2013) (quoting *Valtchev v. City of New York*, 400 Fed. Appx. 586, 588 (2d Cir. 2010)), so long as "'one act of discrimination in furtherance of the ongoing policy occurred within the limitations period,'" *id.* (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)). However, while the continuing violation doctrine may toll the statutory period within which a claimant must file a complaint with the EEOC, it does not eliminate the requirement that a claimant must file her complaint in court within ninety days of receiving a right-to-sue letter. *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 207 (E.D.N.Y. 2014) ("The Court . . . concludes that Plaintiff's continuing violation claim cannot revive her otherwise barred claim where she opted not to act within 90 days of her 2006 EEOC right-to-sue letter") (collecting cases); *see also Torregiano v. Monroe Cmty. Coll.*, No. 11–CV–6300, 2015 WL 6641784, *10 (W.D.N.Y. Oct. 28, 2015) (holding that "a claimant may not 'revive' stale claims, which were not asserted in a district-court action within ninety days after receiving a right-to-sue letter, by re-asserting them in a new EEOC complaint and then obtaining a new right-to-sue letter").

In the present matter, Plaintiff received a right-to-sue letter from the EEOC in February 2011, *see* Dkt. No. 72-31 at 37, in response to Plaintiff's complaint alleging that she had been discriminated against through March 30, 2010, *see* Dkt. No. 72-27 at 4, in retaliation for filing

two two previous complaints with DHR, *see id.* at 2, and because of her national origin, *see id.* at 5. However, Plaintiff did not file the complaint in this action until October 24, 2012, well more than ninety days later. *See* Dkt. No. 1. Accordingly, to the extent Plaintiff relies on incidents that were a part of her March 30, 2010 DHR complaint, "they are barred from consideration by the Court because of Plaintiff's failure to sue within 90 days of receiving a right-to-sue letter in connection with those claims" except insofar as the Court may view those acts as "background information providing context for Plaintiff's claims." *Bowen-Hooks*, 13 F. Supp. 3d at 206-07, 208.

### *2. Exhaustion*

"Exhaustion of administrative remedies through the EEOC is 'an essential element' of . . . Title VII . . . and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001) (quoting *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)). While "a district court may 'hear Title VII claims that either are included in an EEOC charge or are based on *conduct subsequent to the EEOC charge* which is "reasonably related" to that alleged in the EEOC charge,'" *Danials-Kirisits v. N.Y. State Office of Court Admin.*, No. 05–CV–800, 2013 WL 1755663, *5 (W.D.N.Y. Apr. 24, 2013) (quoting *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)), a plaintiff has a "'duty to include all relevant alleged discriminatory conduct when she file[s] the EEOC charge,'" *id.* (quoting *Townsend v. Exchange Ins. Co.*, 196 F. Supp. 2d 300, 313 (W.D.N.Y. 2002)). Thus, a plaintiff may not rely in federal court on "additional specific instances of misconduct that . . . occurred prior to the filing of [her EEOC] charges" but which were not alleged in those charges. *Id.*; *see also Lester v. M&M Knopf Auto Parts*, No. 04–CV–850, 2006 WL 2806465, *7 (W.D.N.Y. Sept. 28, 2006) ("None of the other layoffs are

referenced in the Charges, nor can they be construed as 'reasonably related' to the January 22, 2004 layoff because they predate it"); *Samborski v. W. Valley Nuclear Servs. Co., Inc.*, No. 99–CV–213, 2002 WL 1477610, *5 (W.D.N.Y. June 25, 2002) ("Samborski may not rely on any alleged conduct that occurred before January 5, 1999 other than [that] referenced in her EEOC charge"). Accordingly, the Court will not consider alleged conduct that occurred before May 18, 2012 which was not raised in her May 18, 2012 EEOC charge. The Court does, however, find that Defendants' alleged conduct post-dating Plaintiff's May 18, 2012 EEOC charge is "reasonably related" to that charge's allegations and will therefore be considered by the Court.

### 3. *Hostile Work Environment*

"In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quotation omitted). "A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id.* "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id.* (quotation omitted). Moreover, "[i]n evaluating a hostile work environment claim, a court may not consider incidents unrelated to the plaintiff's protected characteristics." *Guerra v. Murphy*, No. 15–CV–1168, 2016 WL 7480405, *7 (N.D.N.Y. Dec. 29, 2016); *see also Daniel v. T & M Prot. Res. LLC*, 87 F. Supp. 3d 621, 634 (S.D.N.Y. 2015) ("As a threshold matter, some of the conduct Daniel complains of does not

7

appear to be related to his race, perceived national origin, or sex. Such incidents 'must be removed from consideration'" (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)).

"Beyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer." *Gorzynski*, 596 F.3d at 103. "When . . . the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer." *Id.* (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

It has been repeatedly held that "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not objectively severe enough to establish a hostile work environment. *Faragher*, 524 U.S. at 778. The test not only looks at isolated incidents, but requires consideration of all the circumstances present in the workplace contributing to its environment, such as the amount that the alleged conduct interferes with an employee's work performance, its frequency, severity, and threatening nature. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

"For 'racist comments, slurs, and jokes' to be actionable as a hostile work environment, there generally 'must be more than a few isolated incidents of racial enmity.'" *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 673 (S.D.N.Y. 2012) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)). Rather, "'there must be a steady barrage of opprobrious racist comments.'" *Id.* (quoting *Schwapp*, 118 F.3d at 110).

In the present matter, Plaintiff alleges only two specific incidents during the relevant period when a DEC employee made derogatory remarks concerning Plaintiff's race or national origin: (1) on or about August 31, 2012, Plaintiff overheard Christopher Laurenzo refer to Plaintiff as a "spic" while he was speaking to another DEC employee, *see* Dkt. No. 72-50 at 448-

49; Dkt. No. 76-9 at 6; and (2) on or about January 4, 2013, Christopher Laurenzo called Plaintiff a "spic" under circumstances that Plaintiff does not recall, *see* Dkt. No. 72-50 at 449-50; Dkt. No. 76-9 at 6. The Court finds that "these comments, while plainly offensive, were isolated incidents in contrast to the cases where summary judgment is denied because a plaintiff has alleged regular and repeated use [of] offending statements." *Lytle v. JPMorgan Chase*, No. 08–CV–9503, 2012 WL 393008, \*26 (S.D.N.Y. Feb. 8, 2012), *report and recommendation adopted sub nom.*, *Lytle v. JP Morgan Chase*, 2012 WL 1079964 (S.D.N.Y. Mar. 30, 2012), *aff'd*, 518 Fed. Appx. 49 (2d Cir. 2013) (collecting cases); *see also Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07–CV–11316, 2009 WL 900739, \*8 (S.D.N.Y. Apr. 3, 2009) (finding the use of the expression "black ass" to refer to the plaintiff on three occasions, even when considered in conjunction with other offensive conduct such as ignoring and monitoring the plaintiff's whereabouts, was insufficient to support a hostile work environment claim); *Pagan v. N.Y. State Div. of Parole*, No. 98–CV–5840, 2003 WL 22723013, \*6 (S.D.N.Y. Nov. 18, 2003) (finding that "four specific instances when [a defendant] made derogatory remarks concerning Puerto Ricans or Hispanics in [the plaintiff's] presence," one of which involved the use of the term "spics," did not establish a hostile work environment) (collecting cases). Moreover, although "[f]acially neutral incidents may be included . . . among the "totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on [Plaintiff's protected characteristic]," the two race-related incidents perpetrated by Laurenzo "do not justify the inference that wholly different, facially []neutral incidents" not involving Laurenzo "were part of any campaign to harass [Plaintiff] on the basis of her [race or national origin]." *Alfano*, 294 F.3d at 378.

    For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's Title

VII hostile work environment claim is granted.

### *4.* **Prima Facie** *Case of Discrimination*

Title VII provides that it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). To assert a *prima facie* Title VII discrimination claim, a plaintiff must establish that:

> (1) [s]he is a member of a protected class; (2) [s]he is competent to perform the job or is performing h[er] duties satisfactorily; (3) [s]he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on h[er] membership in the protected class.

*Dotson v. City of Syracuse*, No. 11–CV–620, 2013 WL 1293775, *10 (N.D.N.Y. Mar. 27, 2013) (citations omitted).

To constitute a Title VII adverse employment action, there must be a "materially adverse" change in working conditions which "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, . . . or other indices . . . unique to a particular situation." *Giscombe v. N.Y.C. Dep't of Educ.*, No. 12–CV–464, 2013 WL 829127, *5 (S.D.N.Y. Feb. 28, 2013) (citations omitted); *see also Ellerth*, 524 U.S. at 761 ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). Further, a "tangible employment action in most cases inflicts direct economic harm" and "requires an official act of the enterprise" which must be done with the "official power of the enterprise," not merely inflicted by a co-worker. *Ellerth*, 524 U.S. at 762.

The plaintiff must "raise a plausible inference that the action was taken on account of [her]

10

race or national origin." *Acosta v. City of New York*, No. 11–CV–856, 2012 WL 1506954, *5 (S.D.N.Y. Apr. 26, 2012); *see also Griffin v. Brighton Dental Grp.*, No. 09–CV–6611, 2013 WL 1221915, *5 (W.D.N.Y. Mar. 5, 2013) ("Evidence that an individual was treated differently from other employees, standing alone, is insufficient to prove discrimination"). Evidence that a plaintiff was treated less favorably than other, similarly-situated employees who were not members of the plaintiff's protected class supports an inference of discriminatory intent. *See Griffin*, 2013 WL 1221915, at *6. Also, evidence that the plaintiff was subjected to offensive treatment, "such as name-calling, slurs, or bad jokes," directed at the plaintiff's membership in a protected class also supports an inference of discrimination. *Id.* (internal quotations omitted).

In the present matter, Defendants concede the first two elements, *i.e.*, that Plaintiff is a member of a protected class and that she was qualified for her position. Defendants also concede that Plaintiff's termination on January 25, 2013 constitutes an adverse employment decision but contend that she suffered no other adverse employment actions. *See* Dkt. No. 72-1 at 18-20. While Plaintiff takes issue with this characterization, she does not identify any adverse employment decision other than termination, *see* Dkt. No. 81-1 at 17, and agrees that the proper framing of the fourth element is "whether the circumstances of the termination give rise to an inference of discrimination," *id.* As explained below, the Court finds that Plaintiff has failed to establish this element.

First, Plaintiff alleges that certain invidious comments made by DEC personnel raise an inference of discrimination. *See* Dkt. No. 81-1 at 17-19. However, the majority of these comments are time-barred and, in any event, occurred many years before Plaintiff's termination. As for Laurenzo's alleged use of a racial slur on two occasions, Laurenzo did not terminate Plaintiff, nor is Laurenzo Plaintiff's supervisor. *See* Dkt. No. 81-45 at ¶ 594; *see also* Dkt. No.

72-20 at ¶ 11. Therefore, Laurenzo's alleged comments are insufficient to establish that Plaintiff was terminated for a discriminatory reason. *See Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) ("[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark") (collecting cases); *see also Daniel*, 87 F. Supp. 3d at 643 (finding that a plaintiff's superior's harassing and discriminatory conduct did not give rise to an inference of discrimination where a committee decided to terminate the plaintiff, even though the superior sat on that committee); *Lytle*, 2012 WL 393008, at *23 ("For example, even the most offensive comment related to his race, Jorquera's use of the term 'nigga,' does not suggest a discriminatory motivation underlying Lytle's termination because Jorquera did not have a role in Lytle's termination").

Second, Plaintiff alleges that Defendants' failure to correct the behavior of those who allegedly made invidious comments supports an inference of discrimination. *See* Dkt. No. 81-1 at 19-21. Again, the majority of comments raised by Plaintiff are time-barred. As for Laurenzo's alleged use of a racial slur on two occasions, the record contains no evidence that Plaintiff reported the incidents to her supervisors or Fanelli, the individual who ultimately terminated Plaintiff. *See* Dkt. No. 72-21 at ¶ 35. Accordingly, there is no basis for imputing Laurenzo's alleged bias to DEC. *See Daniel*, 87 F. Supp. 3d at 643-44 (finding no "basis for imputing [a superior's] alleged motivation" where there was no evidence that the superior "ma[d]e any discriminatory statements in front of the other executives" with termination power and the plaintiff "did not report [the superior's] conduct to [the executives]").

Third, Plaintiff alleges that discrimination can be inferred because she was terminated purportedly for filing multiple complaints while other co-workers who filed complaints were not.

12

*See* Dkt. No. 81-1 at 21-22. In order to raise an inference of discrimination by showing that she was subject to disparate treatment, a plaintiff "must show she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997)). "What constitutes 'all material respects' . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id.* at 40. In the present matter, Plaintiff filed hundreds of pages of grievances, an order of magnitude greater than that filed by her co-workers. *See, e.g.*, Dkt. No. 72-3 at ¶ 8 ("Over the course of the 15 years that I worked in the area of affirmative action, I have never received anywhere near the amount of documents I received from Ms. Serrano. She sent me ten times more material than any other complainant I ever worked with"). "Other courts have held that disparities of this or lesser magnitude warrant summary judgment." *Toussaint v. NY Dialysis Servs., Inc.*, No. 14–CV–5069, 2017 WL 456471, *13 (S.D.N.Y. Feb. 2, 2017) (collecting cases). Accordingly, the Court finds that Plaintiff has failed to establish that she was in all material respects to her co-workers who filed complaints.

For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's Title VII discrimination claim is granted.

### 5. *Retaliation*

#### *a.* **Prima facie** *case*

To establish a Title VII retaliation claim, a plaintiff must establish that: "'(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and

(4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'" *Gordon v. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (quotation omitted). "Protected activity" includes any "action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). Proof of causation can be shown either indirectly through circumstantial evidence, or "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon*, 232 F.3d at 117. In order to show a retaliatory motive by means of circumstantial evidence, there must be temporal proximity between the adverse employment action and the protected activity. *See Muhammad v. Juicy Couture/Liz Clairborne, Inc.*, No. 09–CV–8978, 2010 WL 4032735, *6 (S.D.N.Y. July 30, 2010).

In the present matter, Plaintiff has sufficiently established a *prima facie* case of retaliation. There is no doubt that Plaintiff "engaged in protected activity when she complained . . . about harassment, filed her EEOC charge and filed her lawsuit." *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 443 (2d Cir. 1999); *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000) ("Matima's formal charge of discrimination [filed with DHR] constituted protected activity under Title VII"). Both sides acknowledge that Plaintiff's termination constitutes the relevant adverse employment action, *see* Dkt. No. 72-1 at 28; Dkt. No. 81-1 at 28, and it is clear that DEC was aware of Plaintiff's participation in protected activities, *see* Dkt. No. 15-3 at 2.

As for the fourth element, the Court finds that Plaintiff's termination letter does not constitute direct evidence of retaliation because its thrust is that Plaintiff was fired for a legitimate, non-retaliatory reason: the "disrupt[ion]" engendered by her complaints. Dkt. No. 15-3 at 2. *See Matima*, 228 F.3d at 79 (finding that "insubordination and conduct that disrupts the workplace are 'legitimate reasons for firing an employee,' . . . "even when a complaint of

14

discrimination is involved") (quoting *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996)); *see also Harrison v. N. Shore Univ. Hosp.*, No. 04–CV–2033, 2008 WL 656674, *10 (E.D.N.Y. Mar. 6, 2008) ("Moreover, an employer may legitimately terminate employment where the employee's conduct is insubordinate or disruptive, even if that conduct involves complaints of discrimination").

Turning to indirect evidence of retaliation, the Court acknowledges that "[m]ere complaints of unfair treatment" not related to a protected characteristic "are not protected speech under Title VII," Dkt. No. 72-1 at 25-26 (citing *McNutt v. Nasca*, 10–CV–1301, 2013 WL 209469, *16 (N.D.N.Y. Jan. 17, 2013)), and that "district courts in this Circuit have consistently held that a passage of two months" constitutes "the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *id.* at 30 (citing *Panagopoulos v. N.Y. State Department of Transportation*, 172 F. Supp. 3d 597 (N.D.N.Y. 2016)).  Here, however, the record establishes that Abadia understood based on Plaintiff's history that Plaintiff's complaints were intended to support her race/national origin discrimination claim.  *See* Dkt. No. 72-3 at ¶¶ 4-5.  Accordingly, the Courts treats the timing of Plaintiff's January 4, 2013 informal complaint to Abadia, coupled with Plaintiff's October 24, 2012 federal complaint in this action, as sufficient to establish indirect evidence of retaliation.

### *b. Legitimate, non-discriminatory basis*

Since Plaintiff has established a *prima facie* case, the burden shifts to Defendants to articulate a legitimate, non-discriminatory basis for their actions.  As explained above, "insubordination and conduct that disrupts the workplace are 'legitimate reasons for firing an employee,'" *Matima*, 228 F.3d at 79 (quoting *Holt*, 95 F.3d at 130), and "[a]n employer does not violate Title VII when it takes adverse employment action against an employee to preserve a

15

workplace environment that is governed by rules, subject to a chain of command, free of commotion, and conductive to the work of the enterprise," *id.* Here, Defendants have provided ample evidence of Plaintiff's disruptive conduct. For example, the record establishes that Plaintiff (1) frequently ignored the chain of command when filing complaints, s*ee* Dkt. No. 72-11 at ¶ 20; Dkt. No. 72-21 at ¶¶ 12, 46-47; (2) ignored her supervisors' instructions and refused to perform certain tasks or comply with routine policies on several occasions, *see* Dkt. No. 72-11 at ¶¶ 17-18, 23, 26, 30, 31; Dkt. No. 72-60 at ¶ 17; and (3) fomented tension within the workplace, *see* Dkt. No. 72-6 at ¶¶ 69, 73; Dkt. No. 72-32 at ¶ 19; Dkt. No. 84-16 at ¶¶ 3, 5. The record also contains evidence, some of which predates Plaintiff's termination by several years, documenting concerns over attendance and time. *See* Dkt. No. 72-11 at ¶ 43; Dkt. No. 72-18; 72-21 at ¶ 50; Dkt. No. 72-60 at ¶ 24; Dkt. No. 76-39.

The foregoing does not establish that DEC and its employees are without fault. Rather, the Court merely finds that DEC has satisfied its burden of establishing a legitimate, non-discriminatory reason for Plaintiff's termination. *See Dawson v. Hudson Valley*, No. 11–CV–8030, 2015 WL 2330298, *4 (S.D.N.Y. Apr. 14, 2015) (finding a plaintiff's insubordination and tardiness to be "legitimate, non-discriminatory reasons for [the] plaintiff's termination"); *Farzan v. Wells Fargo Bank, N.A.*, No. 12–CV–1217, 2013 WL 6231615, *20 (S.D.N.Y. Dec. 2, 2013), *aff'd sub nom. Farzan v. Genesis 10*, 619 Fed. Appx. 15 (2d Cir. 2015) (finding the plaintiff's "refusal to recognize that he was subject to policies like the assignment length cap" constituted a "facially legitimate reason[] for his termination")*; Dimino v. HSBC Bank, USA N.A.*, No. 11–CV–4189, 2012 WL 1202035, *5 (S.D.N.Y. Apr. 11, 2012) (finding that an employer satisfied its burden where the plaintiff's "'on-going legal action in [his] branch [was] reaching the point where [his] co-workers [were] finding [his] behavior disruptive'").

### *c. Pretext*

Since Defendants have articulated legitimate, non-discriminatory bases for their actions, the burden shifts back to Plaintiff to establish that the reasons proffered by Defendant are pretextual. First, Plaintiff argues that Defendants' claim of insubordination is specious because "it ignores the unpunished insubordination of her co-workers." *See* Dkt. No. 81-1 at 29. However, as explained above, Plaintiff was not similarly situated to her co-workers because the number of complaints she submitted dwarves that of her co-workers. *See* Dkt. No. 72-3 at ¶ 8.

Second, Plaintiff argues that the temporal proximity between Plaintiff's renewed formal complaints in 2012-2013 and her termination establish that Plaintiff's justification is pretextual and that insubordination must not have been a serious problem because Defendants did not fire Plaintiff earlier. *See* Dkt. No. 81-1 at 30. However, while "[t]he temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, . . . such temporal proximity is insufficient to satisfy [a plaintiff's] burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). Moreover, the record establishes that Defendants were actually concerned about insubordination years before they terminated Plaintiff. *See Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 71-72 (2d Cir. 2015) ("Even if Calichman, Murphy, and Lesen reacted ill-advisedly to Chen's conduct somehow . . . they arrived at their opinions that Chen had behaved improperly *long before Chen filed her Affirmative Action Complaint.* Thus, no reasonable jury could conclude that their views of the situation were motivated by retaliatory animus arising from Chen's Affirmative Action Complaint").

For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's Title VII retaliation claim is granted.

**B. Section 1983 Equal Protection Claim**

Plaintiff also raises an equal protection claim against Defendant Tupaj. An equal protection violation requires a plaintiff to allege that "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations . . . ." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citations omitted). To establish an inference of discriminatory motive, the plaintiff must sufficiently plead "that other similarly situated individuals—who are outside of the protected class to which the plaintiff belongs—have been treated differently." *Faccio v. Landry*, No. 10–CV–785, 2012 WL 3637412, *3 (N.D.N.Y. Aug. 22, 2012); *see also Village of Willobrook v. Olech*, 528 U.S. 562, 563 (2000) (recognizing equal protection claims where there is no rational basis for the difference in treatment between similarly situated individuals). "[T]he analysis for such claims is similar to that used for employment discrimination claims brought under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). Accordingly, the Court grants Defendant Tupaj's motion for summary judgment on Plaintiff's equal protection claim for substantially the same reasons it grants summary judgment on her Title VII claims in favor of DEC. *See Mills v. S. Connecticut State Univ.*, 519 Fed. Appx. 73, 77 (2d Cir. 2013) ("Because the analysis for § 1983 claims based on equal protection 'is similar to that used for employment discrimination claims brought under Title VII,' . . . Mills's equal protection claim fails for substantially the same reason as her Title VII claim" (quoting *Demoret*, 451 F.3d at 149)).

**C. HRL Claims**

"District courts may decline to exercise supplemental jurisdiction over a claim if the

18

district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (citations and internal quotation marks omitted). In the present matter, Plaintiff brings aiding and abetting claims under HRL against Defendant Tupaj. Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction to address Plaintiff's claims under HRL. *See Bowen-Hooks*, 13 F. Supp. 3d at 240.

## IV. CONCLUSION

After carefully considering the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED;** and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: March 30, 2017
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge